UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-CV-60995-HERNANDEZ

MATTHEW TARDINO,

Plaintiff,

v.

FRANK BISIGNANO, *Commissioner of Social Security Administration*,

Defendant.
_______________________________________/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on Plaintiff Matthew Tardino's ("Plaintiff") Motion for Summary Judgment ("Motion"), [ECF No. 8], and on Defendant Frank Bisignano's, as Commissioner of the Social Security Administration ("Defendant"), Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment ("Response"), [ECF No. 9]. Plaintiff did not file a response to Defendant's summary judgment motion, nor did he file a reply in support of his Motion, and the matter is therefore ripe. The Parties have not objected to Magistrate Judge jurisdiction and have thus consented to it.[1] After a careful review of the Motions, the record, and all relevant authorities, Plaintiff's Motion is **DENIED**, Defendant's summary judgment motion is **GRANTED**, and the Administrative Law Judge's ("ALJ") denial of Plaintiff's claim ("Decision"), [ECF No. 7-2 at 16–35], is **AFFIRMED**.

[1] *See* [ECF No. 4 ¶ 2 ("If no party objects to the jurisdiction of the undersigned Magistrate Judge within this timeframe, then this case will proceed in full before the undersigned Magistrate Judge for all purposes, including entering a dispositive order and final judgment.")].

## BACKGROUND

On August 31, 2022, Plaintiff applied for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, alleging disability starting on May 1, 2019. [ECF No. 7-5 at 2; ECF No. 7-2 at 19]. Plaintiff based the claim on "vision problems, wrist/hand problems, sleep disorder, migraines, fatigue, depression and memory problems." [ECF No. 7-3 at 3]. This case focuses on Plaintiff's alleged wrist problems.[2] [ECF No. 8 at 8–10, 12–13].

The Social Security Administration ("SSA") initially denied Plaintiff's disability application on February 6, 2024, [ECF No. 7-3 at 2; ECF No. 7-2 at 19], and again upon reconsideration on November 19, 2024, [ECF No. 7-3 at 22; ECF No. 7-2 at 19]. After a telephonic hearing, which Plaintiff attended with the benefit of counsel, the ALJ again denied Plaintiff's claim. [ECF No. 7-2 at 16–18, 41–65]. The ALJ considered, and found unpersuasive, Dr. Roderick Santa Maria's conclusory assertion that Plaintiff had only occasional use of his right hand for certain activities. [ECF No. 7-2 at 31–32]. The Appeals Council denied Plaintiff's request for review on February 4, 2026, making the ALJ's Decision final. [ECF No. 7-2 at 3].

Plaintiff raises two objections to the ALJ's Decision. First, he says the ALJ's Decision "that the Plaintiff can frequently handle with the right upper extremity . . . is not supported by substantial evidence." [ECF No. 8 at 8]. On this point, he highlights Dr. Santa Maria's consultative examination[3] and an x-ray of his wrist, which he claims supports his disability. *Id.* at 8–10. Second, Plaintiff claims

---

[2] Plaintiff's Motion only briefly mentions, in passing, that the ALJ's determination of Plaintiff's limitations is "internally inconsistent with the ALJ's other findings," [ECF No. 8 at 8], and that Plaintiff suffered from various mood disorders, cognitive disorders, and insomnia, *id.* at 5–6. Plaintiff fails to develop these arguments and therefore abandons them. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318–19 (11th Cir. 2012), *abrogated on other grounds by United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015) (finding that a party abandons an argument by failing to develop it or cite any legal authority in its support, even if mentioned in passing). As a result, we will not address these undeveloped arguments mentioned only in passing.

[3] A "consultative examination" is a term of art in the social security space. It is "a physical or mental examination or test purchased for [the claimant] at [the Social Security Administration's] request and expense from a treating source or another medical source, including a pediatrician when appropriate." 20 C.F.R. § 404.1519.

the ALJ's characterization of Dr. Santa Maria's conclusion as internally inconsistent, too, lacks record support. *Id.* at 11–14.

Defendant counters that the ALJ's Decision draws support from the progress notes of Plaintiff's treating physicians and from Dr Santa Maria's own examination. [ECF No. 9 at 4–7]. Defendant adds that the ALJ's Decision properly explains its reasoning, including its reliance on the treating providers' progress notes over Dr. Santa Maria's opinion. *Id.* at 7–10.

## LEGAL STANDARDS

A. Judicial Review

A court's review of an ALJ's Decision is limited to assessing whether there is substantial evidence in the record to support the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his or her determination. *See Biestek v. Berryhill*, 587 U.S. 97, 102–103 (2019); *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) ("In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." (cleaned up)). The Court will also affirm an ALJ's decision so long as substantial evidence supports it. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

The standard for substantial evidence requires more than a mere scintilla and requires relevant evidence that a reasonable person would accept as sufficient to uphold a conclusion. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (finding that substantial evidence is "more than a scintilla, but less than a preponderance"). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (citation omitted). "Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence." *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). "The ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the

claimant's medical condition as a whole." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024), *cert. denied sub nom. Raper v. O'Malley* 145 S. Ct. 984 (2024) (citing *Dyer*, 395 F.3d at 1210; *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987)). "Our standard of review is . . . whether the ALJ's conclusion as a whole was supported by substantial evidence in the record." *Dyer*, 395 F.3d at 1211.

B. Regulatory Framework

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions. 20 C.F.R. § 404.1513(a). Medical opinions are statements "from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [a claimant] ha[s] one or more impairment-related limitations or restrictions" in several areas. *Id.* § 404.1513(a)(2). These areas include a claimant's ability to "perform physical demands of work activities," such as "lifting, carrying, pushing, pulling, [and] other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." *Id.* § 404.1513(a)(2)(i). ALJs also consider "[o]ther medical evidence . . . that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* § 404.1513(a)(3).

When evaluating "medical opinions and prior administrative medical findings," the ALJ will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* § 404.1520c(a). The ALJ "will articulate in [her] determination or decision how persuasive" she finds "all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." *Id.* § 404.1520c(b). Four factors bear on the persuasiveness of this medical evidence: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant[4], and (4) specialization. *Id.* § 404.1520c(c)(1)–(4); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38

[4] This factor breaks down into the following sub-factors: the length of the treatment relationship; the frequency

F.4th 892, 897 (11th Cir. 2022) (outlining the medical opinion factors). There is also a catch-all provision, meaning the ALJ considers "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of" the SSA's "disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5); *see also Harner*, 38 F.4th at 897 (noting the ALJ considers "other relevant information, such as the physician's familiarity with the other record evidence and with making a claim for disability").

Supportability and consistency "are the most important" factors when determining the persuasiveness of a "medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2). Supportability refers to how relevant "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)"—the "more relevant" they are, the "more persuasive" they will be. *Id.* § 404.1520c(c)(1). Consistency refers to how "consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim"—the "more consistent" they are, the "more persuasive" they will be. *Id.* § 404.1520c(c)(2). Put differently, supportability examines internal logic and relevance, whereas consistency requires comparison and contextualization. Because they are the most important factors, the ALJ "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [her] determination or decision." *Id.* § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how" she considered the other factors. *See id.*; *Gary-Lowe v. O'Malley*, No. 22-cv-22379-JB, 2024 WL 1178658, at *5 (S.D. Fla. Feb.

of examinations; the purpose of the treatment relationship; the extent of the treatment relationship; and whether the medical source has examined the claimant. 20 C.F.R. § 404.1520c(c)(3).

12, 2024); *Bonilla v. Saul,* No. 19-cv-25323-KMW, 2020 WL 9048787, at *4–5 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, No. 19-cv-25323-KMM, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021).

C. The Sequential Evaluation for Disability Claims

To be eligible for Social Security Disability Benefits ("DIB"), a claimant must meet the disability criteria outlined in the Act. *See* 42 U.S.C. §§ 423(a)(1)(E), (d). Claimants are considered disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

To determine a claimant's eligibility for DIB, the ALJ employs a five-step sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *See id.* § 404.1520(a)(4)(i) ("At the first step, we consider your work activity, if any."). If so, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

If the claimant is not engaged in substantial gainful activity, then the ALJ must go on to step two and determine whether the claimant suffers from a "severe impairment." *Id.* § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities" regardless of the claimant's "age, education, and work experience." *See id.* § 404.1520(c). If a claimant does not have "a severe medically determinable physical or mental impairment . . . or a combination of impairments," the ALJ will find that the claimant is not disabled. *See id.* § 404.1520(a)(4)(ii).

If the ALJ concludes that a claimant has a severe impairment, then the ALJ moves on to step three. *See Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c. The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). If the impairment meets the listing, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d) ("If you have an impairment[ ] which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment[ ], we will find you disabled without considering your age, education, and work experience."). If a claimant's impairment does not meet or equal an impairment listed in Appendix 1, then the ALJ proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. *See id.* The Regulations define RFC as "the most [a claimant] can still do despite [his or her] limitations." *Id.* § 404.1545(a)(1). This determination factors in "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. *Id.* § 404.1545(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. *See id.* § 404.1520(f) ("If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work."). If so, the claimant is found not disabled. *See id.* ("If you can still [perform past relevant] work, we will find that you are not disabled.").

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. *See id.* §§ 404.1520(g), 404.1560(c). "At step five the burden of going forward shifts to the

[Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale*, 831 F.2d at 1011). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.*

## THE ALJ'S DECISION

On June 23, 2025, the ALJ entered an unfavorable decision, finding Plaintiff "has not been under a disability within the meaning of the Social Security Act since August 31, 2022, the date the application was filed." [ECF No. 7-2 at 19].

At *step one*, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the date of Plaintiff's application. *Id.* at 21. At *step two*, the ALJ found that Plaintiff has severe impairments, including post traumatic and degenerative changes of the right wrist, that significantly limited his ability to perform basic work activities. *Id.* at 21–23. Moving on to *step three*, the ALJ determined that these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, listings 12.04 or 12.11. *Id.* at 23–25. She noted that Plaintiff had "no documented medical need for a walker, bilateral canes, or bilateral crutches or wheeled and seated mobility device." *Id.* at 23. Referencing the consultative exam with Dr. Santa Maria, the ALJ noted that, although Plaintiff "had limited pronation and supination of the right wrist[,] . . . there is no evidence of neurological or motor deficits that completely prevent him from using his right upper extremity" and, further, he had complete use of his left upper extremity. *Id.* Analyzing Plaintiff's claimed mental limitations, the ALJ highlighted evidence that he "was able to take care of his personal needs, took care of his pets, was able to make sandwiches or prepared foods, cleaned a few times a week, . . . shopped for clothing a few times a year and for groceries every other week, . . . [enjoyed] taking his dogs for a walk, [enjoyed] playing games on his phone, and . . . kept busy doing

chores around the house," and he had not reported having any problems engaging in his activities of daily living. *Id.* at 25 (citing [ECF No. 7-6 at 15–22, 64–74, 90–100; ECF No. 7-7 at 2–197, 299–539, 652–713, 730–772, 777–826]). And so, the ALJ concluded, "section 1.18 of the Listing of Impairments are not met." *Id.* at 23. The ALJ concluded that Plaintiff had the RFC to perform light work with limited exceptions, including that he could only frequently handle objects with his right upper extremity, only frequently carry 10 pounds, and only occasionally carry 20 pounds. *Id.* at 27. The ALJ found that Plaintiff's claims that "[h]e would not be able to use his right hand to handle things, finger or grasp frequently, or for 2/3 of the day," and that he could only carry "4 or 5 pounds with the right hand," were inconsistent with the medical evidence on record. *Id.* at 26–27. She highlighted that Plaintiff's primary care notes "do not include any complaints or examination findings associated with the claimant's allegations regarding his difficulties using his dominant right hand due to the residual effects of his 1992 accident and subsequent surgery and fusion" and showed "few, if any, complaints related to inability to lift, carry, sit, stand, or walk." *Id.* at 27.

The ALJ also discussed Plaintiff's January 2024 consultative examination with Dr. Santa Maria—the only record support for Plaintiff's wrist injury mobility complaints. The ALJ observed that Dr. Santa Maria's "[j]oint and musculoskeletal exam in general was normal with no signs of atrophy or joint derangement" despite "scars on both sides of the right wrist that limited pronation and supination." *Id.* at 28. Despite these mild limitations, Plaintiff "was able to open and close to a normal fist, touch the tip of each finger to the thumb, and fully extend and flex all fingers" and "[d]exterity for small objects such as a key, picking up a piece of paper, or pulling his clothes on and off seemed normal." *Id.* The ALJ also addressed an October 2024 x-ray that showed "deformity of the distal metaphysis compatible with healed impacted fracture, mild to moderate asymmetric narrowing of the radiocarpal joint spaces that appeared degenerative, and no acute inflammatory, posttraumatic, or destructive changes." *Id.* (citing [ECF No. 7-7 at 713]). The ALJ determined that

the results of Dr. Santa Maria's examination and the October 2024 x-ray "confirm decreased right wrist range of motion, namely 50 degrees of right wrist flexion and extension, 30 degrees of radial deviation, and 20 degrees of ulnar deviation with remaining range of motion and testing within normal limits . . . and degenerative changes." *Id.* (citing [ECF No. 7-7 at 637–50]). Even so, the ALJ observed, Plaintiff showed normal dexterity and "5/5 grip[5] strength in both hands." *Id.* Plaintiff's right wrist abnormalities were the basis of the ALJ's limitations on Plaintiff's ability to perform light work. *Id.* at 32.

Although crediting Dr. Santa Maria's examination in some respects—indeed, the ALJ based certain limitations on those results—the ALJ determined that Dr. Santa Maria's proposed limitations were "not supported by the results of the consultative examination itself, which demonstrated no abnormalities in any area other than the claimant's decreased pronation and supination of the right wrist secondary to his fracture and surgery." *Id.* at 32.

The ALJ noted that Plaintiff had worked "until about 2017 stocking shelves," *id.* at 27, which the record supports, [ECF No. 7-7 at 637]. Dr. Santa Maria's records reflect that the "function of [Plaintiff's] upper extremities was adequate for that job." *Id.* Dr. Santa Maria's observations also support the ALJ's other findings, including that Plaintiff was able to open and close his hand normally, touch the tip of each finger to the thumb, and fully extend and flex all fingers. *Id.* at 638. They also support the ALJ's statement that Plaintiff showed normal dexterity with small objects. *Id.* And the consultative examination did not reveal any physical abnormalities, such as "cyanosis, clubbing or edema." *Id.* Slight limits of the range of motion of Plaintiff's right wrist (no more than 10 degrees in any given dimension) were documented. *Id.* at 640. Although Dr. Santa Maria opined that Plaintiff

[5] Although Dr. Santa Maria's examination reflected 5/5 grip strength in Plaintiff's left hand, it showed slightly compromised strength in the right hand, corresponding to 4/5. [ECF No. 7-7 at 641]. At a different point in Dr. Santa Maria's records, he contradicts himself, instead indicating that Plaintiff's "motor strength is . . . 5/5 both hand grips." *Id.* at 638.

should be limited to frequently lifting up to 21 pounds, occasionally lifting up to 50 pounds, frequently carrying up to 10 pounds, and occasionally carrying up to 50 pounds, the only "particular medical or clinical findings" provided to justify these limitations was a note reading "joints start hurting at interval [sic]," which appeared to be based on Plaintiff's self-reported arthritis. *Id.* at 642; *see also* [ECF No. 7-2 at 32 (ALJ finding that Dr. Santa Maria failed to support his standing and walking limitations "given the lack of objective examination findings, including no objective examination findings supporting the claimant's complaints of arthritis pain")]. The ALJ did not credit Plaintiff's self-reported arthritis, and Plaintiff does not challenge that finding here. [ECF No. 7-2 at 22–23, 28]. Dr. Santa Maria further recommended that Plaintiff be limited to only occasionally reaching, handling, fingering, feeling, pushing, or pulling with his right hand. [ECF No. 7-7 at 644].

The ALJ identified various factors that undercut the persuasiveness of Dr. Santa Maria's medical opinion. For one thing, it was internally inconsistent, finding that Plaintiff "could lift and carry up to 50 pounds occasionally" but "could only occasionally use the bilateral upper extremities for occasional reaching and handling." [ECF No. 7-2 at 32]. For another, the doctor's recommendation conflicted with "the treating provider progress notes, which do not document any reported complaints, imaging studies, or treatment for any musculoskeletal condition, including right wrist pain." *Id.* (citing [ECF No. 7-7 at 2–197, 205–626, 652–713, 730–772, 777–826]). On the latter point, the ALJ cited treating provider medical records from VA medical centers. [ECF No. 7-7 at 2–197, 205–626, 652–713, 730–772, 777–826].

The ALJ found that Plaintiff has no past relevant work and proceeded to step five. [ECF No. 7-2 at 33–34]. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff could perform the requirements of a mail clerk, laundry sorter, or hand washer. *Id.* at 33. Based on this testimony, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, since . . . the date [Plaintiff's] application was filed" and was "capable of making a

successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 34.

The vocational expert testified that someone of Plaintiff's age, education, and work history who "can frequently handle with the right upper extremity" would be able to work as mail clerk, laundry sorter, or hand washer. *Id.* at 59–60. According to this same expert, however, the employment options are nonexistent for someone who could only "occasionally handle with the right upper extremity and frequently finger with the right upper extremity." *Id.* at 60. Thus, the determining factor as to Plaintiff's disability status was whether he could "frequently" or "occasionally" handle with the right upper extremity.

## Analysis

Plaintiff argues the ALJ's RFC determination that he can "frequently" handle with his right hand finds no substantial evidence in the record. [ECF No. 8 at 8–10]. He also contends that the ALJ's Decision not to rely on Dr. Santa Maria's conclusion was not supported by substantial evidence. *Id.* at 11–14. Defendant counters that the ALJ's Decision reflects a "thorough consideration of the medical evidence," including Dr. Santa Maria's own evaluation, and is thus supported by substantial evidence. [ECF No. 9 at 5]. Defendant further responds that the ALJ was properly unpersuaded by Dr. Santa Maria's opinion because it lacked supportability and consistency—the two most important factors when it comes to gauging the persuasiveness of medical opinion evidence. *Id.* at 7 (citing 20 C.F.R. § 416.920c(c)(1)–(5)).

Upon review of the Parties' respective filings and the underlying record, the Court denies Plaintiff's Motion, [ECF No. 8], grants Defendant's motion for summary judgment, [ECF No. 9], and thus affirms the ALJ's Decision. The Court first finds that substantial evidence supports the ALJ's RFC assessment. Second, we likewise conclude that the ALJ's analysis of Dr. Santa Maria's medical opinion finds substantial evidence in the record.

A. Substantial Evidence Supports the ALJ's RFC Decision

Plaintiff says "[t]he ALJ unilaterally determined with no objective medical support or medical opinion evidence that the Plaintiff could handle frequently despite his right wrist impairments," and she failed to create a "logical bridge" linking this determination and her assessed work limitations. [ECF No. 8 at 10]. This argument overlooks key parts of the record, including Dr. Santa Maria's observations, the ensuing x-ray, and the care notes from Plaintiff's treating physicians. Because the ALJ properly grounded her RFC assessment in the record evidence, Plaintiff's challenge fails.

Plaintiff's argument turns on Dr. Santa Maria's consultative examination and an October 25, 2024 x-ray of his wrist. *See id.* at 8–10. Dr. Santa Maria noted that a 1992 car accident left Plaintiff with injuries that limit pronation and supination of his right wrist, *id.* at 8 (citing [ECF No. 7-7 at 637]). Dr. Santa Maria observed scarring around Plaintiff's wrist consistent with those prior injuries, as well as the reported wrist mobility issues, *id.* at 8–9 (citing [ECF No. 7-7 at 638]). Plaintiff highlights an October 25, 2024 x-ray showing a deformity of his wrist consistent with a healed fracture and mild to moderate narrowing at the joint, which he says corroborates Dr. Santa Maria's impressions. *Id.* at 9 (citing [ECF No. 7-7 at 713]). These two pieces of evidence, Plaintiff submits, "support[ ] a limitation to no more than occasional handling and fingering with the right upper extremity." *Id.* at 9.

Defendant highlights the parts of Dr. Santa Maria's examination that support the ALJ's limitations, noting the lack of "cyanosis, clubbing or edema of the extremities," and Plaintiff's "normal joint and musculoskeletal exam," which showed "no signs of atrophy or joint derangement." [ECF No. 9 at 5 (citing [ECF No. 7-2 at 28; ECF No. 7-7 at 638])]. The examination also showed Plaintiff had "the ability to open and close to a normal fist, touch the tip of each finger to the thumb, and fully extend and flex all fingers." *Id.* (citing [ECF No. 7-2 at 28]). Plaintiff also showed "normal" "[d]exterity for small objects," "motor strength [which] was 5/5 in both biceps," "hand grip strength [which] was 5/5 bilaterally," and "deep tendon reflexes [which] were intact in the upper . . .

extremities." *Id.* (citing [ECF No. 7-2 at 28]). One point of clarification, however. Dr. Santa Maria's report is inconsistent on the matter of grip strength, reflecting both "4/5" as to the right hand, and "5/5" as to *both* hands. [ECF No. 7-7 at 638, 641].

Defendant also emphasizes that the October 25, 2024 x-ray showed "mild to moderate asymmetric narrowing of the radiocarpal joint spaces that appeared degenerative, and no acute inflammatory, posttraumatic, or destructive changes." [ECF No. 9 at 5 (citing [ECF No. 7-2 at 28])]. And, Plaintiff's arguments to the contrary notwithstanding, the ALJ did not overlook Plaintiff's range of motion limitations in reaching her assessment. As Defendant points out, the ALJ found that Plaintiff was subject to certain lifting limitations as a direct result of his wrist mobility issues. *Id.* at 6 (citing [ECF No. 7-2 at 28]). Additionally, the ALJ's opinion partially rests on the fact that Plaintiff's primary care notes do not include any complaints or examination findings regarding his right hand despite having worked consistently as a retail stocker after his 1992 accident. *Id.* (citing [ECF No. 7-2 at 28; ECF No. 7-6 at 23–30, 44–51; ECF No. 7-7 at 637]). Finally, Defendant argues Plaintiff's reported activities supported the ALJ's RFC findings, including his statements that he could take care of his personal needs, as well as caring after his pets and home. *Id.* (citing [ECF No. 7-2 at 25; ECF No. 7-6 at 15–22, 64–71, 90–97; ECF No. 7-7 at 3–197, 300–539, 652–711, 730–1133, 777–825]).

Substantial evidence supports the ALJ's RFC determination, and the fact that Plaintiff can identify portions of the record that support more severe limitations does not change that fact. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (declining to overturn ALJ decision simply because claimant pointed to record evidence to support her position). Applying the substantial-evidence standard, a court must "look[ ] to an existing administrative record and ask[ ] whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 587 U.S. at 102 (alteration adopted, quotation marks omitted). We may not "substitute our judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (citation omitted). "[Plaintiff] must do more than point to evidence

in the record that supports h[is] position; [ ]he must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims*, 706 F. App'x at 604. Even where "one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court." *Gray v. Colvin*, No. CV 124-018, 2025 WL 25956, at *7 (S.D. Ga. Jan. 3, 2025), *report and recommendation adopted sub nom. Gray v. King*, No. CV 124-018, 2025 WL 299794 (S.D. Ga. Jan. 24, 2025).

Plaintiff fails to "show the absence of substantial evidence supporting the ALJ's conclusion," *Sims*, 706 F. App'x at 604, and instead asks the Court to substitute Dr. Santa Maria's judgment for that of the ALJ. But the ALJ's Decision stands on firm evidentiary ground. By contrast, Dr. Santa Maria's records do very little to justify his conclusions. Aside from the vague assertion that Plaintiff's "joints start hurting at interval [sic]," the doctor supplied no medical or clinical findings to support his proposed carry-related limitations. [ECF No. 7-7 at 642]. He did not justify his limitation as to Plaintiff's reaching, handling, fingering, feeling, pushing, or pulling with his right hand except to state that Plaintiff "has [right] wrist [illegible] fused – so limited fine manipulation." *Id.* at 644. He provided no explanation whatsoever as to Plaintiff's "minimal" ability to sort, handle, or use paper/files, leaving the explanation section blank. *Id.* at 647. In sum, Dr. Santa Maria's documents "describe the what of h[is] opinion" but "say nothing about the how of h[is] opinion," and "simply conclude [that Plaintiff's] conditions cause (mostly) extreme limitations without any supporting explanation." *See Tayyem v. Comm'r of Soc. Sec.*, No. 24-cv-21149-BB, 2025 WL 1047137, at *17 (S.D. Fla. Feb. 5, 2025) (finding that such conclusory medical opinions "offer no objective or subjective evidence to buttress [a therapist's] findings; they offer only conclusions"), *report and recommendation adopted*, No. 24-cv-21149-BB, 2025 WL 782126 (S.D. Fla. Mar. 12, 2025). Moreover, Dr. Santa Maria's report is internally inconsistent on the matter of grip strength, assigning both "5/5" and "4/5" grip strength for Plaintiff's right hand. [ECF No. 7-7 at 638, 641].

Plaintiff cites cases that do nothing to advance his position. For example, Plaintiff faults the ALJ for "unilaterally determin[ing]" that he could frequently handle with his right upper extremity, despite difficulties with supination and pronation of his right wrist. [ECF No. 8 at 10]. He says the medical evidence showed scarring and degenerative joint narrowing at the wrist, which "bear directly" on his ability to handle, finger, and feel with his right hand. *Id.* at 9. This ignores other crucial aspects of the ALJ's analysis, and the record this analysis was based on. First, the ALJ summarized the medical record evidence, noting the lack of cyanosis, clubbing or edema of the extremities. [ECF No. 7-2 at 28]. The joint and musculoskeletal exam, the ALJ went on, "was normal with no signs of atrophy or joint derangement." *Id.* Plaintiff could close his hand into a fist, showed dexterity for small objects, and could dress normally. *Id.* His bilateral bicep strength was 5/5, and his hand grip strength was, at worst, 4/5. *See id.* Moreover, Plaintiff "did not have deforming arthritis." *Id.* The ALJ did, however, note the scarring on Plaintiff's right wrist, which "limited pronation and supination." *Id.* Dr. Santa Maria's examination, which the ALJ detailed in her opinion, further supported decreased range of motion in Plaintiff's right wrist. *Id.* None of these limitations, however, prevented Plaintiff from "perform[ing] tasks such as opening and closing his right first" and there were "no other range of motion or neurological deficits." *Id.* Synthesizing this evidence, the ALJ concluded that the wrist abnormalities supported certain lifting limitations, but did not preclude him from "frequently hand[ling] with his right upper extremity," and added that appropriate "environmental restrictions" such as avoiding extreme temperatures and vibrating surfaces and tools, would avoid "exacerbating his right wrist pain." *Id.* Far from a "unilateral" determination, the ALJ's analysis was based on a thorough review of the record and reveals a concerted effort to integrate all the relevant evidence. That's also why Plaintiff's reliance on *Fekeith v. Commissioner of Social Security*, No. 6:21-CV-1631-DAB, 2022 WL 2643591 (M.D. Fla. July 8, 2022), is misguided.

Citing *Fekeith*, Plaintiff argues "the failure to include all manipulative limitations undermines the RFC assessment." [ECF No. 8 at 10]. In *Fekeith*, "the ALJ did not include *any* manipulative limitations in the RFC assessment despite finding that Claimant's carpal tunnel syndrome was a severe impairment." *Fekeith*, 2022 WL 2643591, at *2 (emphasis added). Here, the ALJ gave a comprehensive review of the medical records and the consultative examination before imposing the relevant manipulative limitations—as well as environmental restrictions. [ECF No. 7-2 at 28]. At Plaintiff's hearing, the ALJ questioned a vocational expert on the possibility of jobs in the national economy for a hypothetical individual who could "frequently" handle with the right upper extremity and for jobs for another hypothetical individual who could only "occasionally" do so. [ECF No. 7-2 at 59–60]. And, as we've said, that a plaintiff finds record support for his arguments does not mean the ALJ's decision lacked evidentiary support. *See Dyer*, 395 F.3d at 1210 ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.").

Finally, Plaintiff argues that "[t]here is simply no logical bridge between the ALJ's conclusion that Plaintiff's only manipulative limitation is that he can handle for two-thirds of the day and the medical evidence." [ECF No. 8 at 9–10]. The "logical bridge" concept applies in the Seventh Circuit—but the Eleventh Circuit has not adopted it. *See Sturdivant v. Soc. Sec. Admin., Comm'r*, No. 22-13952, 2023 WL 3526609, *4 (11th Cir. 2023) ("[Plaintiff] argues that the ALJ was required to link evidence to the RFC findings, but our case law only requires that the ALJ state with clarity his reasons for his decision."). Concededly, some courts in this District have cited the Seventh Circuit's reasoning with approval, so we address that concept here. *See, e.g.*, *Gary-Lowe*, 2024 WL 1178658, at *7 ("[T]he ALJ must build a logical analytical bridge explaining what particular evidence undermined [the medical] opinions and why."). Assuming the logical bridge applies, the ALJ's Decision met that standard. A "'logical bridge' simply means that 'an ALJ must articulate at some minimum level, her analysis of the

evidence.'" *Moore v. Kijakazi*, No. 23-CV-206, 2023 WL 8187216, at *4 (M.D. Fla. Nov. 27, 2023) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). The ALJ adequately explained the basis of the limitations she imposed on Plaintiff, [ECF No. 7-2 at 27–30], and cited extensive record evidence justifying Plaintiff's RFC and rejecting Dr. Santa Maria's determinations, *id.* at 32 (citing [ECF No. 7-7 at 2–197, 205–626, 652–713, 730–772, 777–826]). This reliance on extensive treating provider progress notes is "more than a scintilla" of evidence as required. *Hale*, 831 F.2d at 1011.

It is clear from a review of the ALJ's opinion and the record as a whole that the ALJ did consider the available evidence regarding Plaintiff's RFC, including the opinions of Dr. Santa Maria and Plaintiff's history of a fractured, healed, and fused right wrist. Because substantial evidence supports the ALJ's RFC findings, this Court will not disturb them.

B. Substantial Evidence Supports the ALJ's Supportability Analysis of Dr. Santa Maria's Medical Opinion

Plaintiff next objects that the ALJ's analysis of Dr. Santa Maria's medical opinion lacks substantial evidence, especially on the supportability factor. [ECF No. 8 at 11–14]. Plaintiff avers that the ALJ incorrectly "portrayed abnormal examination results that support Dr. Santa Maria's opinion as unsupportive." *Id.* at 13.

To refresh, supportability refers to how relevant "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"—the "more relevant" they are, the "more persuasive" they will be. *Id.* § 404.1520c(c)(1). Supportability considers "the extent to which a medical source has articulated support for the medical source's own opinion," or "whether the medical source's opinion is [ ] supported by the source's own records." *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-1674, 2022 WL 807443, at *5 (M.D. Fla. Mar. 17, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)). In determining Plaintiff's RFC, the ALJ is not required to "'specifically refer to every piece of evidence in h[er] decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Herrera v.*

*O'Malley*, No. 24-cv-20047-EGT, 2025 WL 2256349, at *3 (S.D. Fla. Mar. 27, 2025) (quoting *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009)).

Plaintiff raises a twofold challenge to the ALJ's supportability analysis. First, he argues that the ALJ's finding that Dr. Santa Maria's opinion is internally inconsistent "is not supported." [ECF No. 8 at 12]. According to Plaintiff, Dr. Santa Maria's conclusion that he could occasionally lift up to 50 pounds "is entirely consistent with [the doctor's] corresponding finding that Plaintiff can only occasionally handle, finger, feel, and reach with this right upper extremity." *Id.* Second, Plaintiff takes aim at the ALJ's finding that the doctor's opinion lacked support in the examination. *Id.* at 12–13. Plaintiff contends that the decreased range of motion documented by Dr. Santa Maria is "entirely consistent with the opined limitation that the Plaintiff would be limited to occasional handling, fingering, and feeling on the right [hand]." *Id.*

Defendant responds that "[t]he relevant inquiry is not whether some evidence might support an opinion, but whether substantial evidence supports the ALJ's decision." [ECF No. 9 at 9]. Defendant highlights the "remarkably normal findings" from the consultative examination, *id.*, noting the doctor's observations regarding Plaintiff's function and physiology. *See also* [ECF No. 7-7 at 638 (physical examination narrative prepared by Dr. Santa Maria)]. Defendant argues that these findings, combined with the ALJ's consideration of the entire record, satisfies the requirement that the ALJ explain how she considered the supportability factor for Dr. Santa Maria's opinion as required by 20 C.F.R. § 416.920c(b)(2). *Id.* at 8–9. Defendant views Plaintiff's arguments as an improper attempt to reweigh the evidence in his favor. *Id.* at 9.[6]

[6] Defendant also defends the ALJ's consistency factor analysis of Dr. Santa Maria's medical opinion, noting that the doctor's opinion ran counter to that of Plaintiff's treating providers. [ECF No. 9 at 8]. Because Plaintiff does not attack the ALJ's consistency analysis—which is the factor that invites comparison between pieces of evidence—the Court need not reach this argument.

This Court will affirm ALJ factual findings that are supported by substantial evidence. Importantly, substantial evidence is "more than a scintilla, but less than a preponderance." *Hale*, 831 F.2d 1007. This means that, even if the preponderance of the evidence weighs against the ALJ's decision, it will stand so long as substantial evidence backs it. *See Dyer*, 395 F.3d at 1210; *Bloodsworth*, 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)). The ALJ's supportability Decision will likewise stand if she "sufficiently identified the evidence that [she] relied on to find [the] medical opinions [at issue] unpersuasive." *Rodriguez*, 2022 WL 807443, at *7.

Here, the ALJ summarized Dr. Santa Maria's findings in her Decision with citations to the evidentiary record. [ECF No. 7-7 at 31–32]. She explained that the doctor's "opinion that the claimant could lift and carry up to 50 pounds occasionally but could only occasionally use the bilateral upper extremities for occasional reaching and handling is internally inconsistent." *Id.* The tension between these conclusions undermined confidence in the doctor's medical opinion. The ALJ noted problems with the doctor's other opinions as well. The doctor's range of motion assessment, for instance, went against the consultative examination, "which demonstrated no abnormalities in any other area" besides Plaintiff's wrist. [ECF No. 7-2 at 32]. Thus, the ALJ outlined the basis for her supportability determination. Dr. Santa Maria's records show only mild range of motion and function limitations, and his proposed limitations are conclusory. [ECF No. 7-7 at 640, 642, 644, 647]. A reasonable person could accept this record evidence as sufficient to uphold the ALJ's conclusions as to supportability. *See Hale*, 831 F.2d at 1011.

Plaintiff identifies no medical opinion that the ALJ failed to address in reaching her Decision. Rather, his objections to the ALJ's analysis center on how she *weighed* the record below, urging us to credit Dr. Santa Maria's conclusions over the ALJ's. *See* [ECF No. 12–14]. That is not the proper standard. *See Winschel*, 631 F.3d at 1178. This Court's review "is limited to whether the ALJ's decision—not [the doctor's] opinion—is supported by substantial evidence. That [the doctor's]

opinion might be consistent with some record evidence is not enough to overturn the ALJ's decision." *Vergara v. Comm'r of Soc. Sec.*, No. 22-11671, 2023 WL 5814433, at *3 (11th Cir. Sept. 8, 2023). The Court thus concludes that the ALJ properly assessed the supportability, and, by extension the persuasiveness, of Dr. Santa Maria's medical opinion.

*   *   *

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, [ECF No. 8], is **DENIED**. Defendant's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, [ECF No. 9], is **GRANTED**. The ALJ's Decision is **AFFIRMED**. The Clerk of Court is directed to **CLOSE** this case. All pending motions, if any, are **DENIED AS MOOT**.

**DONE and ORDERED** in the Southern District of Florida on October 28, 2026.

YENEY HERNANDEZ
UNITED STATES MAGISTRATE JUDGE

cc: all counsel of record